No. 30,506.

MEREDITH EDGERTON, *Appellee,* v. E. R. MORGAN, *Appellant.*

(10 P. 2d 885.)

Opinion filed May 7; 1932.

A. V. *Roberts* and *Jesse D. Wall,* both of Wichita, for the appellant.

J. W. *Blood* and *F. W. Prosser,* both of Wichita, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for a sum claimed to be due for damages because of defendant's failure to perform a contract between the parties. The jury answered special questions and returned a general verdict for plaintiff, which was modified by the court, and judgment was rendered for plaintiff. Defendant has appealed.

Briefly the facts may be thus stated: Plaintiff, then a young man about twenty years of age, in the early months of 1930 was employed by the Rajah Rabbitry at Wichita, which at that time was a financially thriving business concern. In some way he met defendant, who was then vice president and cashier of one of the Wichita banks. Defendant became interested in the rabbit business and together the parties planned to go into that business. Early in March they went to the office of an attorney in Wichita and had him prepare a contract, which they executed. This contract recited that the parties contemplated: (1) Establishing a rabbitry, or rabbitries, at Oklahoma City, Okla., and other points throughout the United States, and (2) promoting a corporation to finance and operate such rabbitries. By the terms of the contract they agreed: *First,* to make application for a charter for a corporation with $1,000,000 capital stock, and to take steps as rapidly as possible to

complete the organization. *Second*, since the parties planned to obtain most of the stock in exchange for plans, devices and equipment —and it would be necessary to use some of the stock in the organization of the corporation—it was agreed that the stock should be owned by the parties in equal amounts, and "that all stock which may be necessary to be transferred or given in promoting said corporation shall be contributed equally." *Third*, that the expenses of financing the corporation "shall be paid for from funds procured in promotion of the organization," but preliminary funds should be furnished by the parties in equal amounts. *Fourth*, that plaintiff should devote his entire time to the business and defendant should devote his time "in an advisory capacity as may be needed." *Fifth*, the parties agreed upon a name for the corporation. *Sixth*, it was agreed that in all transactions between the parties, or with relation to the proposed business, they should be jointly interested "both in the matter of income and the matter of expenditures." Plaintiff had no money to invest in the enterprise, but he knew, or thought he knew, the business and was willing to devote his time to it. It was contemplated to organize the corporation at once, but on the advice of their attorney that something tangible would have to be turned over to the corporation for its stock, the parties proceeded to acquire rabbits and equipment. Through defendant, plaintiff executed a note to the bank where defendant was employed for $500, the proceeds of which were so used. Defendant stated that he did not want to sign the note for the reason that he did not desire the note with his name on it in the bank, and did not want the president of the bank to know that he was devoting a part of his time to a side enterprise of this character. As other funds were needed additional notes were given, and at defendant's suggestion plaintiff's parents signed the notes, or some of them, with plaintiff, to procure needed funds. There is evidence that the parties consulted and agreed with respect to everything that was done. Defendant gave plaintiff letters of introduction to persons in Oklahoma City, whom plaintiff interviewed with the view of interesting them in helping establish a rabbitry at Oklahoma City. On one occasion defendant went to Oklahoma City and while there called plaintiff by telephone and had him go there and introduced him to parties whom he thought might assist. Rabbits and equipment were purchased and expenses incurred to the amount of about $9,000 by the latter part of April. Plaintiff's evidence was to the effect that defendant then declined to

go forward with the project and he was compelled to close it out. About that time other rabbitries in this part of the country were meeting financial reverses and the outlook for the business was not good.

Defendant's principal contention was that on the day after the contract had been prepared by the attorney and executed by the parties they mutually agreed to abandon the enterprise, and that he had nothing further to do with it. On that point there was conflicting evidence in the trial court. In answer to a special question the jury found that the business enterprise was not so abandoned. This finding was approved by the trial court. There is an abundance of evidence to sustain it, and it is binding here.

Appellant argues that under the written agreement he was bound only to pay one-half of the preliminary expenses of organizing the corporation, and since the corporation was not organized there were no such expenses. This is an inaccurate interpretation of the contract. It is true by the contract the parties were each bound to pay one-half the preliminary expenses of organizing the corporation, but it is also true that by the agreement their declared purpose was to go into the rabbit business, and it was specifically provided in paragraph No. 6 that the parties should be jointly interested in the matter, not only of income, but of expenditures as to all the business contemplated by their contract.

The court, in its rulings and instructions, treated the relation of the parties as being that of partners. Appellant complains of this. Perhaps more accurately it was in the nature of a joint adventure; but as between the parties, on an accounting between them, or liabilities one to the other, the relations would be the same; hence there was no error in that ruling.

Appellant contends if the parties were partners the action was in the nature of an accounting triable to the court, hence that their objection to submitting the case to a jury should have been sustained. Even if it were triable to the court, a jury might have been called in an advisory capacity. In effect that was what was done here. The jury answered special questions, which the court later approved, but the court declined to follow the general verdict of the jury, making its own computation. But passing that. Here the defendant denied all liability. Among other things, plaintiff asked for damages because of defendant's failure to carry out his contract. What plaintiff really did was to set out the facts, as our

code provides. At this stage of the matter it would not make much difference whether the action would be properly classified as one for specific performance, or for an accounting, or for damages. Defendant answered, raising all the questions he desired, and the entire controversy has been heard and determined. It could serve no useful purpose to send this case back to have it tried to the court alone.

The case is almost entirely one of controverted facts. Aside from the preparation and execution of the written contract practically every question in the case was controverted in the parol testimony. There is an abundance of evidence to sustain the findings of the jury, and the judgment rendered. It was the function of the jury and the trial court to pass upon the conflicts of testimony. No good purpose would be served in setting this testimony out in detail. There is no material error in the record. The judgment of the court below is affirmed.